WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cari Arrington,<br><br>   Plaintiff,<br><br>v.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>   Defendant. | No. CV-12-00947-PHX-DGC<br><br>**ORDER** |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Cari Arrington ("Plaintiff" or "the claimant") seeks judicial review of the Commissioner's decision finding her not disabled within the meaning of the Social Security Act. For the reasons that follow the Court will deny Plaintiff's appeal.

**I.   Background.**

Plaintiff applied for disability insurance benefits on June 4, 2008, alleging a disability onset date of May 31, 2007. Tr. at 187. The claim was denied both on initial application and on rehearing. Tr. at 147-48. In June 2011, an Administrative Law Judge ("ALJ") held a hearing and issued a decision that Plaintiff was not disabled. Tr. at 12-26. The Appeals Council then declined to review the decision, making it the final decision of the Commissioner. Tr. at 1-4.

**II.   Legal Standard.**

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d

880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

**III. Analysis.**

For purposes of Social Security benefits determinations, a disability is

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505.

Determining whether a claimant is disabled involves a sequential five-step evaluation process. The claimant must show (1) he is not currently engaged in substantial gainful employment, (2) he has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from performing his past work. If at any step the Commissioner determines that a claimant is or is not disabled, the analysis ends; otherwise it proceeds to step five. If the claimant establishes his burden through step four, the Commissioner bears the burden at step five of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

The ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date through her last insured date of December 31, 2009. Tr. at 14. At step two, the ALJ found that Plaintiff suffered from a severe combination of impairments including hypothyroidism, obesity, possible fibromyalgia, and chronic back

pain. Tr. at 14.  At step three, the ALJ found that the combination of impairments did not meet or equal one of the listed impairments through the date last insured.  Tr. at 17; *see* C.F.R. pt. 404, subpt. P, app. 1.  The ALJ then considered the entire record and determined that the claimant had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with a limitation to unskilled work.  Tr. at 18.  The ALJ determined that the claimant had sufficient RFC to perform her past relevant work as a fast food worker, cashier, deli worker, and housekeeper (Tr. at 24) and, in the alternative, that Medical-Vocational Rule 202.21 would direct a finding of not-disabled for someone with the claimant's profile through her date last insured.  Tr. at 25.

Plaintiff challenges the conclusions of the ALJ on several grounds.  First, she contends that the ALJ improperly failed to consider evidence that Ms. Peter stated that claimant could not perform jury duty because of an inability to sit for long periods of time.  Tr. at 308. Claimant also argues that the ALJ failed to consider evidence that claimant's application for a handicapped parking placard indicated that she could not walk more than 200 feet without stopping to rest.  Tr. at 356.  Finally, Plaintiff contends that the ALJ improperly discounted the medical source statements of Dr. K. Vosler and Dr. F. Nagy which both found more severe limitations than the ALJ.  The Court will consider each argument in turn.

**A.     Ms. Peter's Statement Regarding Jury Duty.**

Ms. Peters is a physician's assistant that treated Plaintiff at the Prescott Neurological Clinic.  Physician's assistants are not acceptable medical sources; they are treated as "other sources" and are "not entitled to the same deference" as acceptable medical sources.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ may discount testimony from "other sources" if the ALJ "'gives reasons germane to each witness for doing so.'"  *See Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001)).

On July 3, 2008, which appears to have been Plaintiff's first visit to the clinic, Ms. Peters indicated in a treatment note that Plaintiff could not perform jury duty because she

1 could not sit for long periods of time. Tr. at 308. It is not clear from the treatment notes whether Ms. Peters reached this conclusion herself or merely recorded something Plaintiff said. *Id.* The ALJ considered Ms. Peters' treatment notes as a whole and found that they showed "routine, monthly follow-up care" and "normal examination findings." Tr. at 18. The ALJ did not mention Ms. Peters by name, but she did refer several times to Exhibit 2F and cited specific pages in the exhibit. Tr. at 18. Exhibit 2F consists of Ms. Peters' treatment notes. *See* Tr. Index; Tr. at 307-341. Although the ALJ did not directly cite the one page out of 34 that included Ms. Peters' reference to jury duty, the ALJ's decision makes clear that she reviewed the treatment notes and found they reflected normal examinations, routine treatment, and even a refusal to grant Plaintiff a handicap placard. Tr. at 18. This constitutes a sufficient basis, germane to Ms. Peters, for not crediting the brief note about jury duty. The ALJ need not have mentioned Ms. Peters by name to satisfy this requirement. *See Turner,* 613 F.3d at 1224 (ALJ's analysis of relevant time period and lack of medical opinions during that time period constituted sufficient basis for "disregarding" other source report). The ALJ did not err in discounting the opinion of Ms. Peters.

**B.   Handicap Parking Application.**

On July 16, 2008, Plaintiff received a handicap placard from the Department of Motor Vehicles. Tr. at 356. The application was signed by Ms. Armando, a nurse practitioner, who had also checked the box indicating that Plaintiff could not walk more than 200 feet without stopping for rest. Tr. at 356. Like a physician's assistant, a nurse practitioner is not an acceptable medical source and her opinions are entitled to less weight. *Molina*, 674 F.3d at 1111.

The DMV application appears in the record as part of the treatment notes of North Community Healthcare Clinic. Tr. at 356; Tr. Index. The ALJ did not specifically cite to the application, but she did cite Exhibit 4F, which consists of the treatment notes and the application. Tr. at 19. The ALJ found that Exhibit 4F shows Plaintiff was treated "routinely and conservatively with medication." *Id.* In making this finding, the ALJ

specifically cited to the list of medications found on the page before the placard application. Tr. at 19 (citing page 6 of Exhibit 4F, which corresponds to Tr. at 355). The ALJ also noted that Physician Assistant Peters "denied [Plaintiffs'] multiple requests for a handicap placard" and instead stated that Plaintiff "needs to continue to walk." Tr. at 18; *see* Tr. at 328-330. These findings constitute a sufficient, germane basis for not attaching weight to the handicap placard. *See Turner,* 613 F.3d at 1224.

### C. Dr. Vosler's Medical Source Statement.

Dr. Vosler is Plaintiff's treating physician. While the "ALJ must consider all medical opinion evidence," *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), "[t]he medical opinion of a claimant's treating physician is entitled to 'special weight,'" *Rodriquez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)). The ALJ may reject the opinion of a treating or examining physician by making "'findings setting forth specific legitimate reasons for doing so that are based on substantial evidence in the record.'" *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (internal citation omitted). Furthermore, where the treating physician's opinion is not contradicted by another physician, the ALJ's reasons for rejecting the opinion must be "clear and convincing." *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989); *see Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) ("[A]n ALJ may reject a treating doctor's medical opinion, if no other doctor has contradicted it, only for 'clear and convincing' reasons supported by substantial evidence.") (citing *Reddick*, 157 F.3d at 725).

Dr. Vosler opined that the Plaintiff was extremely limited in her ability to sit, stand, and walk, and that she would have serious, manipulative, environmental, and postural limitations. Tr. at 21. The ALJ considered Dr. Vosler's testimony, but gave it very little weight. Tr. at 21. His justification for discounting the Dr. Vosler's opinion was based upon contradictions between Dr. Vosler's opinion and the opinions of several

other examining physicians. He cited to examinations in the Prescott Neurological Clinic in 2007 that returned normal results. Tr. at 334. The ALJ also noted the opinion of Dr. Baker, who after an October 1, 2008 evaluation, found that Plaintiff had no trouble sitting, standing, moving, bending and lifting. Tr. at 398. Dr. Barker further opined that that Plaintiffs' impairments were non-severe and that she would not have any work related limitations. Tr. at 373-78. The ALJ noted that Dr. T. Smith believed that Plaintiff's goiter might be a major issue, but that the labs he ordered as a result of that theory came back mostly normal. Tr. at 450-55, 501-515. On July 28, 2010, A. Massimo, a nurse practitioner, examined plaintiff and noted a normal history and physical examination except for the Plaintiff's goiter. Tr. at 503-504. The ALJ also examined treatment notes from two other 2010 examinations and determined there had been no change in Plaintiff's condition. During that year, A. Hojatollah reported normal findings on examination except for morbid obesity, and Dr. Askari did nothing more than prescribe medication and recommend weight loss. Tr. at 21 (citing Tr. at 520-42).

The ALJ also rejected Dr. Vosler's opinion because the level of severity expressed in the opinion was inconsistent with his own treatment notes. Tr. at 21 (citing Tr. at 444-449). Additionally, the ALJ noted that the record showed a course of treatment that was consistently routine and conservative, with no referrals to specialists or surgical intervention. Tr. at 19-20. The ALJ provided specific citations to multiple X-ray, MRI, and nerve exams that all returned normal results. Tr. at 19-20.

In sum, the ALJ determined that Dr. Vosler's opinion was not supported by the record, and she provided "specific legitimate reasons . . . that are based on substantial evidence in the record." *Thomas*, 278 F.3d at 957. The ALJ's decision to discount Dr. Vosler's opinion was not error.

### D. Dr. Nagy's Medical Source Statement.

The ALJ notes that Dr. Nagy did not provide any record that he ever treated the claimant, particularly before the date last insured. Tr. at 21. Thus, Dr. Nagy's opinion was not entitled to the same level of deference as a treating physician, but as an

examining physician, his opinion was still generally entitled to more weight than a non-examining physician. *See Andres v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995).

Dr. Nagy opined that the claimant "would have very extreme restrictions due to her impairments." Tr. at 21. The ALJ expressly considered this opinion, but found that it was undercut by the same objective medical evidence that refuted Dr. Vosler's opinion and was in conflict with the numerous other physical examinations that appear in the record. Tr. at 21. The ALJ also noted that "Dr. Nagy's opinion is in 'check the box format' with no citation to any treatment record, diagnostic studies or clinical findings." *Id.* The Ninth Circuit has instructed that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957.

For the reasons discussed above with respect to Dr. Vosler's opinion, and in light of the conclusory nature of Dr. Nagy's opinion, the Court concludes that the ALJ provided clearly sufficient reasons for discounting the Nagy opinion.

**IT IS ORDERED** that Plaintiff's appeal of the Commissioner's decision is **denied.**

Dated this 17th day of December, 2012.

David G. Campbell
United States District Judge